IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Gwendolyn Hightower, | Civil Action No.: 1:14-cv-02761-RBH |
| Plaintiff, | |
| v. | **ORDER** |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Shiva V. Hodges.[1] Plaintiff Gwendolyn Hightower brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for disability insurance benefits and Supplemental Security Income ("SSI"). In her R&R, the Magistrate Judge recommends affirming the decision of the Commissioner.

### FACTUAL FINDINGS AND PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits and SSI on February 22, 2011[2], alleging that she became unable to work on January 22, 2011. The application was denied initially and on reconsideration. Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). That hearing was held on January 23, 2013, and Plaintiff appeared and testified. A vocational expert also testified. The ALJ issued a decision dated February 6, 2013, finding that Plaintiff was not disabled. The ALJ's overall findings were as follows:

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to the Magistrate Judge.

[2] Plaintiff was previously approved for a closed period of disability from June of 2005 through September 2007. She filed a second application in July of 2009, alleging an onset date in January of 2008. This Court affirmed the Commissioner's unfavorable decision in *Hightower v. Comm'r*, No. 1:12-2728-RBH, 2014 WL 958045 (D.S.C. Mar. 11, 2015).

1.      The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2.      The claimant has not engaged in substantial gainful activity since January 22, 2011, the alleged onset date (20 CFR 404.1571 *et seq* and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: Degenerative Disc Disease; Degenerative Joint Disease/Osteoarthritis; Obesity; Mood Disorder; Borderline Personality Disorder; Borderline Intellectual Functioning; Alcohol Abuse  (20 CFR 404.1520(c) and 416.920(c)).

. . .

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . .

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: she can only occasionally operate foot controls; she can never climb ladders, ropes, or scaffolds; she can only occasionally climb ramps or stairs; she can never kneel, crouch, or crawl; she can only occasionally balance and stoop; she must avoid exposure to extreme heat, humidity, hazards, heights, and driving; she is limited to unskilled work with only occasional public interaction and occasional interaction with coworkers.

. . .

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

7.      The claimant was born on August 19, 1970 and was 40 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 404.569, and 416.969(a))..
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 22, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 18–30.

The ALJ's finding became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for further review. On July 9, 2014, Plaintiff filed this action seeking judicial review of the Commissioner's decision. Compl., ECF No. 1. Both Plaintiff and the Commissioner filed briefs, ECF Nos. 19 and 21, and the Magistrate Judge issued her Report and Recommendation ("R&R") on June 12, 2015, recommending that the Commissioner's decision be affirmed, R&R, ECF No. 24. Plaintiff filed timely objections to the R&R on June 29, 2015. Pl.'s Objs., ECF No. 25, and Defendant replied on July 15, 2015. Def.'s Reply, ECF No. 26.

### STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Act is a limited one. The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). "Substantial evidence"

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citations omitted).

This statutorily mandated standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1973) (holding that the Court must uphold the decision supported by substantial evidence "even should [it] disagree"). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assume that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

Furthermore, a *de novo* review is conducted of the Magistrate Judge's R&R. 28 U.S.C. § 636(b)(1). The R&R is only a recommendation to the Court and has no presumptive weight; indeed, the responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to her with instructions. § 636(b)(1).

The right to *de novo* review, however, may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court need not conduct a *de novo* review

4

when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.* Moreover, in the absence of objections to the R&R, the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). In that event, however, the Court must " 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## DETERMINATION OF DISABILITY

Under the Act, Plaintiff's eligibility for the benefits she is seeking hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). A claimant may establish a *prima facie* case of disability based solely upon medical evidence by demonstrating that her impairments meet or medically equal the listed impairments set forth in Appendix 1 of Subpart P. 20 C.F.R. § 404.1520(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. § 404.1560(b). These factors include the claimant's (1)

"residual functional capacity," *id.* § 404.1560; (2) age, *id.* § 404.1563; (3) education, *id.* § 404.1564; (4) work experience, *id.* § 404.1565; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, *id.* § 404.1560. If the assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. *Id.* § 404.1560. The interrelation between these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. § 404.1520, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether she suffers from some severe physical or mental impairment, (3) whether that impairment meets or medically equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents her from returning to her previous work, and (5) whether the impairment prevents her from performing some other available work.

## ANALYSIS

The Magistrate Judge recommends affirming the decision of the Commissioner. Specifically, the Magistrate Judge recommends a finding that (1) the ALJ's decision to discount the medical opinions of examining psychologist Dr. John Bradley was supported by substantial evidence and without legal error; and (2) the ALJ's finding that Plaintiff did not meet Listing 12.05C for an intellectual disability[3] was supported by substantial evidence and without legal error, and the ALJ's failure to follow the precise requirements of AR 00-1(4) was harmless. The Magistrate Judge also rejected the plaintiff's arguments based on the Fifth Edition of the Diagnostic

---

3    The Social Security Administration substituted the term "intellectual disability" for the term "mental retardation" in an August 1, 2013 amendment to the regulations. 78 Fed. Reg. 46,499, 46,501 (Aug. 1, 2013). As it did not affect the regulation substantively, the Court will use the new term. The change in terminology in the regulations came after the term "mental retardation" in the DSM-IV-TR was changed to "intellectual disability" in DSM-5.

6

and Statistical Manual of Mental Disorders ("DSM-5"). Plaintiff objects to each of the Magistrate Judge's recommendations, and the Court addresses Plaintiff's objections in turn.

## I.     The Weighing of Dr. John Bradley's Medical Opinions

Plaintiff objects to the Magistrate Judge's recommendation to affirm the decision of the ALJ to discount the medical opinions of Dr. Bradley, who performed two consultative psychological examinations of Plaintiff, one on November 26, 2008 (Tr. 358) and the other on June 8, 2009 (Tr. 424).[4] Specifically, Plaintiff argues that "the ALJ erroneously gave little weight to the opinion of Dr. Bradley regarding her mental impairments." Pl.'s Objs. 1. Plaintiff also asserts that the ALJ "fails to recognize Hightower's diagnosis of 'recurrent' depression" and that the Magistrate Judge engaged in post hoc reasoning. *Id*. In response, the Commissioner argues that the ALJ's decision to discount Dr. Bradley's opinion was supported by substantial evidence and that the Magistrate Judge did not engage in post hoc rationalization.

The ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c). Generally, more weight is given to the opinion of an examining medical source than a non-examining source. 20 C.F.R. §§404.1527(c)(1), 416.927(c)(1). Also, greater weight is usually given to the opinions of treating sources than non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). While an ALJ is under no obligation to accept any medical opinion, he must explain the weight given to such opinions. All medical opinions are evaluated using the same factors, found in 20 C.F.R. §§ 404.1527(c), 416.927(c). *See Saunders v. Colvin*, 2014 WL 1057024, No. 5:12-cv-775-D, at *8, note 2 (E.D.N.C March 17, 2014).

The Court must review the ALJ's decision *de novo*—in light of the Magistrate Judge's recommendation and Plaintiff's objections. Unless the Commissioner finds that a medical opinion

---

[4]     Both examinations were performed before the alleged onset date in this case of January 22, 2011.

7

is both an opinion of a treating source and entitled to controlling weight, the Commissioner must consider the following non-exclusive list of factors to determine the weight to be afforded a medical source opinion: (1) examining relationship; (2) treatment relationship (3) supportability; (4) consistency; (5) specialization; and (6) other factors that support or contradict the opinion. 20 C.F.R. § 404.1527(c).  Here, there is no dispute that Dr. Bradley was an examining source, and Plaintiff does not contend that Dr. Bradley's opinion is entitled to controlling weight.

In the administrative decision, the ALJ explained the reasons why he gave Dr. Bradley's opinions little weight.  He referenced Dr. Bradley's opinion that the claimant meets listing 12.05 (mental retardation) and stated:

> In regards to (Dr. Bradley's) finding that the claimant has mild mental retardation, the claimant has not demonstrated the deficits in adaptive functioning that would be expected from someone that is mentally retarded.  The claimant has reported that she completed high school, and she even indicated that she has worked as a substitute teacher. . . She further testified that she attended college for a short period and that she has held jobs as a housekeeper and cook. This does not show the deficits in adaptive functioning consistent with Dr. Bradley's determination that the claimant is functioning in the mentally retarded range of intellectual functioning.

The ALJ also found that the evidence did not support Dr. Bradley's opinion that the claimant met listing 12.04 (affective disorders) and discussed the evidence extensively. (Tr. 23)  He found that the Paragraph B criteria of the listings have not been met because the claimant's mental limitations do not cause at least two "marked" limitations or one "Marked" limitation and "repeated" episodes of decompensation, each of extended duration.  He also found that the Paragraph C criteria were not met.  In his RFC analysis, he also engaged in an in depth review of the evidence and explained that he gave "little weight" to Dr. Bradley's opinions because they were given long before the onset date and were "inconsistent with the objective evidence," as the "claimant's condition is well-controlled in her current medication regimen." (Tr. 28). The ALJ

8

thoroughly applied the pertinent factors in analyzing the opinions of Dr. Bradley. This satisfies the substantial evidence standard.

Plaintiff also argues that "absent a finding that Hightower's condition changed significantly following Dr. Bradley's assessment, the fact that the opinion was provided prior to the alleged onset date is not as material as the Magistrate would suggest." (Pl. Objs. p. 4) Plaintiff cites several cases in which courts have considered medical evaluations made after a claimant's insured status has expired, *e.g., Bird v. Comm'r*, 699 F.3d 337 (4th Cir. 2012). The Court disagrees. In the case at bar, the plaintiff received significant treatment for her depression after Dr. Bradley wrote his opinions, and the evidence supports the finding by the ALJ that her condition had improved.

Plaintiff also argues that the Magistrate Judge engaged in post hoc rationalization in mentioning that the ALJ in the case at bar was likely aware that the ALJ who issued a decision on the previous application rejected the opinions. *See* R&R, p. 27, ECF No. 23. The plaintiff correctly points out that the Magistrate Judge went beyond what the ALJ stated. The ALJ found that Dr. Bradley's opinion "was rendered in the context of Plaintiff's previous application and 'given long before the alleged onset date'". ((Tr. 28) However, if error, the quoted sentence in the R&R was harmless, as the ALJ did not commit error in giving less weight to opinions that were rendered before the relevant period and finding that the plaintiff had improved since those opinions were rendered. Accordingly, the Court finds the Magistrate Judge recommendation to be proper, and Plaintiff's objections are overruled.

**II.     Listing 12.05C**

Plaintiff contends that the Magistrate Judge's recommendation is erroneous because the ALJ's finding that Hightower did not meet Listing 12.05C is not supported by substantial evidence. In particular, Plaintiff asserts that "the ALJ was required to consider a prior ALJ's ruling that Hightower had deficits in adaptive functioning." Pl. Objs. p. 5. In response to the objections, the

9

Commissioner contends that the ALJ's assessment of Plaintiff's mental impairments under Listing 12.05C was without error and supported by substantial evidence. The Commissioner asserts that "Plaintiff failed to prove that she experienced significantly subaverage intellectual functioning with deficits in adaptive functioning that manifested before age twenty-two." Reply to Objections, p. 3 (ECF No. 26, p. 3)

> Listing 12.05 provides, in pertinent part:
>
>> [I]ntellectual disability refers to significantly subaverage general intellectual functioning **with deficits in adaptive functioning** initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>>
>> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>>
>> . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . . (emphasis added)

After reviewing the record *de novo* in light of Plaintiff's objections, the Court finds the Magistrate Judge's recommendation to affirm the ALJ to be proper. The Commissioner's regulations include an extensive list of impairments known as "the Listings" which the agency considers disabling without the need to assess whether a claimant can perform any work. 20 C.F.R. part 404, subpart P, Appendix 1. The listed impairments are considered by the agency to be sufficiently severe to prevent all gainful activity. 20 C.F.R. Section 404.1525. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Plaintiff has the burden to establish that his impairment is disabling at Step 3. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Aldridge v. Astrue*, 880 F.Supp.2d 695, 698 (E.D. N.C. 2012).

The Fourth Circuit recently discussed the proper analysis under Listing 12.05C. In *Hancock v. Astrue*, 667 F.3d 470 (4th Cir. 2012), the court broke Listing 12.05C down into three prongs and noted that a claimant "can prevail only if she establishes that the ALJ erred in his analysis of" *each* prong of Listing 12.05C. *Id.* at 475. The three prongs as described by *Hancock* are (1) "**deficits in adaptive functioning** initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22"; (2) the plaintiff establishes "one of the four additional requirements identified as Requirements A-D."; and (3) the plaintiff establishes "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* at 473 (emphasis added). Listing 12.05 "does not expressly define 'deficits in adaptive functioning'. While the SSA has cautioned against restricting its definition to one used by professional organizations for diagnostic purposes alone—such as the definition set out in the Diagnostic and Statistical Manual of Mental Disorders (DSM)—it nevertheless allows the use of professional organizations to assist the Commissioner in determining whether the necessary elements of mental retardation have been established under the Regulations." *Faint v. Colvin*, 26 F. Supp. 3d 896, 909 (E.D. Mo. 2014). However, in revising the Listings of Impairments in 2002, for example, the Commissioner rejected a proposal that the DSM's definition of mental retardation be used for Listing 12.05. *See* 67 Fed.Reg. 20,022. *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006).

The Social Security Administration's Program Operations Manual System (POMS) states that the phrase "adaptive functioning" refers to "the individual's progress in acquiring mental, academic, social and personal skills as compared to other unimpaired individuals of his/her same age." POMS DI 24515.056(D)(2). "Adaptive activities" are described elsewhere in the Mental Disorders Listing as "cleaning, shopping, cooking, taking public transportation, paying bills,

11

maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. part 404, subpt. P, Appendix 1, Section 12.00(C)(1). Social functioning and limitations in concentration, persistence, or pace may also impact determinations. *Id*., Section 12.00(C)(2)-(3). "Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012), citing *Atkins v. Virginia*, 536 U.S. 304, 309 n. 3 (2002).

Contrary to Plaintiff's arguments otherwise, the Magistrate Judge correctly found that remand is not appropriate based on the ALJ's alleged failure to consider findings of the previous ALJ in Plaintiff's prior claim (ECF No. 23 at 37). In both the current decision and prior decision, each ALJ decided that Plaintiff failed to prove deficits in adaptive functioning necessary for Listing 12.05C on the same evidentiary basis: Plaintiff's educational history, her work history, her daily activities, and her medical history (Tr. 22-23, 123). Because the two findings are consistent, the ALJ did not run afoul of any preclusion principles by failing to adopt the prior decision's findings. Additionally, the prior decision simply states that the evidence "supports a finding of a significant deficit in her functional academic skills" but that the evidence "does not reveal significant deficits in any of the other skill areas described in the DSM-IV-R." (Tr. 123) Plaintiff asserts that the ALJ in the case at bar erred in failing to discuss this finding, which was made under the old DSM-IV-R criteria for intellectual disability, and which required deficits in two areas, while the newer DSM-V only requires a deficit in only one broad area to meet the criteria. The Court disagrees. The plain language of Listing 12.05 requires a showing of more than one deficit in adaptive functioning by using the word, "deficits" in adaptive functioning. After the DSM was revised (DSM-V), the

wording of the listing was not changed. The Court also notes that, at the time the ALJ issued his decision in 2013, the DSM had not yet been revised, so the ALJ could not have considered it anyway.[5]

The substantial evidence supports the ALJ's findings. The Plaintiff's work history was almost entirely semi-skilled work. "[S]emi-skilled work corresponds to an SVP [Specific Vocational Preparation] of 3-4". SSR 00-4p. Courts within this circuit have "repeatedly upheld an ALJ's finding that a claimant did not have deficits in adaptive functioning based in part on a past ability to perform semi-skilled or skilled work." *Weatherford v. Colvin*, No. 13-1885-RMG, 2014 WL 3881056, at *10 (D.S.C. Aug. 5, 2014) (*citing Weedon v. Astrue*, No. 11-2971-DCN-PJG, 2013 WL 1315311, at *7 (D.S.C. Jan. 31, 2013), *adopted by* 2013 WL 1315206 (D.S.C. Mar. 28, 2013)). *See also Sims v. Colvin*, No. 12-3332, 2014 WL 793065, at *11 (D.S.C. Feb. 24, 2014). Plaintiff cites *Shaw v. Astrue*, No. 08-132, 2009 WL 2486932 (E.D.N.C. Aug. 13, 2009) in support of her position. However, *Shaw* does not address the issue of whether *skilled* and *semi-skilled* work is inconsistent with deficits in adaptive functioning. Moreover, *Shaw* held only that a claimant's ability to work in the past "does not *necessarily* suggest that the claimant does not satisfy the deficits in adaptive functioning requirement." *Id.* at *6 (emphasis added). Because the ALJ in *Shaw* did not articulate any other reasonable basis to find the claimant lacked deficits in adaptive functioning, the Court found remand appropriate. Here, as the Magistrate Judge explained, the ALJ relied upon Plaintiff's graduation from high school[6] and daily activities, in addition to her history of semi-skilled work, to find that Plaintiff did not meet the requirements for finding deficits in adaptive functioning (ECF No. 23, at p. 28-32).

---

[5]     *See Aper v. Colvin*, No. 3:14-cv-3040-MEF, 2015 WL 4716298 at *8, note 1 (W.D. Ark. August 7, 2015).
[6]     Although Plaintiff made inconsistent statements regarding her attendance of special education classes in high school, the substantial evidence indicated that she received a regular high school diploma (Tr. 98, 256). *See* R&R, ECF No. 23, at p. 30, n. 8.

The ALJ here performed a review of Plaintiff's work history, regular activities, living and social situation, educational history, and medical information, and ultimately found that Plaintiff does not meet Listing 12.05. Accordingly, the Court finds that the ALJ's decision regarding Plaintiff's adaptive functioning was proper in light of the substantial evidence in the record, and no legal error occurred. *See Hancock*, 677 F.3d at 475–76. Therefore, the Magistrate Judge's Report is adopted as modified.[7]

## CONCLUSION

The Court has thoroughly reviewed the entire record as a whole, including the briefs, the Magistrate Judge's R&R, Plaintiff's objections to the R&R, and applicable law. For the reasons set forth above and by the Magistrate Judge, the Court hereby overrules Plaintiff's objections and adopts and incorporates by reference the R&R of the Magistrate Judge, as modified. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell<br>
R. Bryan Harwell<br>
United States District Judge

August 20, 2015
Florence, South Carolina

---

[7] The Court does not find it necessary in this case to consider the remaining reasons that the Magistrate Judge finds to support her findings. *See* R&R, pp. 36-37, ECF No. 23, pp. 36-37.